IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

UNITED STATES OF AMERICA,

    Plaintiff,                      No. CR S-05-0387 KJM

    vs.

RONALD SCOTT,

    Defendant.                 ORDER

_____/

        On January 26, 2006, this case came on for hearing on defendant Ronald Scott's motion to suppress two baggies, containing approximately .75 grams of marijuana, found on August 3, 2005 in the glove compartment of his vehicle and in a cigarette box located on the center console of the vehicle. Livia Morales and Lara Wallman, Certified Law Student, from the Federal Defender's Office, appeared for defendant Scott, who was present; Matthew Block, Certified Law Student, appeared for the government. In accordance with this court's request, the parties submitted simultaneous closing arguments on the motion to suppress, as well as simultaneous replies to those closing arguments.[1]

---

[1] In accordance with the court's request, the parties also submitted supplemental briefing on the question whether the government waived the issue of community care-taking when it did not raise the issue prior to its reply to defendant's closing argument.

1

A. <u>Facts</u>

The following facts elicited from Officers O'Connor and Asarian at the hearing on January 26, 2006, provide the factual backdrop for resolution of the issues presented in the pending motion.

On August 3, 2005 at approximately 4:00 p.m., Officer Asarian, a law enforcement park ranger in Lassen Volcanic National Park, was alerted by an unknown motorist of a vehicle accident further down the road. RT 8:15-25. When Officer Asarian arrived at the scene of the accident a few minutes later, he first noticed a vehicle overturned and located down an embankment. RT 9:12-17. He then approached defendant Scott, who was sitting on a rock on the shoulder of the road attempting to arrange for a tow of the vehicle, which was his. RT 11:4-17. Officer Asarian smelled an odor of alcohol as he spoke with defendant. RT 11:18-23. Officer Asarian then requested another unit be brought to the scene to transport defendant as a prisoner because he suspected defendant was drunk. RT 22:11-22, 28:19-22. Officer Asarian confirmed that the vehicle belonged to defendant after running a computer check for the registered owner based on the vehicle's license plate. RT 11:25, 12:1-10. Officer Asarian repeatedly offered defendant medical services, which defendant refused. RT 12:14-21. However, Officer Asarian still requested an ambulance. RT 13:13-17.

Officer Asarian and defendant then went down the embankment to retrieve the latter's driver's license, which defendant said was located inside the vehicle. RT 13:13-17. Defendant went into the vehicle, retrieved his wallet, and gave his driver's license to the officer, which the officer used to confirm defendant's identity. RT 33:3-10, 34:4-24. Officer Asarian is unsure whether the defendant actually entered the vehicle completely or whether he just used his upper body in retrieving his wallet. RT 33:3-10. Officer Asarian noticed the vehicle's engine was not running but could hear the vehicle's radio. RT 14:2-6. For safety reasons, Officer Asarian asked defendant to remove the keys, which defendant was unable to do after three failed

attempts.[2] RT 14:7-21. During these attempts, Officer Asarian noticed a cardboard container containing beer inside defendant's vehicle. RT 15:9-15. Defendant attempted to conceal the box by placing a soft-sided cooler and an item of clothing over it. RT 33:23-25, 34:1, 47:2-10. When asked if he had been drinking, defendant said yes, but said he had only one 24 ounce beer four hours earlier. RT 15:16-20. With defendant's consent, Officer Asarian administered three field sobriety tests to defendant. RT 16:12-25, 17:1-25, 18:1-25, 19:1-25, 20:1-18. Based on the results of these tests, the officer determined defendant likely had been driving under the influence of alcohol. RT 36: 2-6. The defendant also consented to a breath test, which yielded a measurement of .168 blood alcohol concentration. RT 20:20-25, 21:1-24. Officer Asarian placed defendant under arrest for driving under the influence of alcohol.[3] RT 22:2-5.

      As requested by the officer, an ambulance arrived. While the medical personnel examined defendant they asked how the accident occurred, to which defendant responded "too much alcohol and too much speed." RT 23:17-25, 24:1-25, 25:1-12. Before accompanying the ambulance to the hospital, Officer Asarian asked one of the other officers at the scene, Officer O'Connor, to retrieve the beer he had seen in the vehicle earlier, as evidence that defendant had been driving under the influence. RT 25:20-25, 26:1-18. Officer O'Connor's supervisor, Officer Martin, also asked Officer O'Connor to find the vehicle registration and insurance information. RT 73:13-16.

      Before searching the car, Officer O'Connor took approximately 75 pictures of the scene while the car was on the embankment and after it was removed from the embankment by a private tow truck company. RT 58:23-25, 59:1-8. One of the pictures taken by Officer

---

[2] Defendant's Exhibit A, admitted at hearing, shows that the vehicle's gear was not in park. RT 68:11-23. The defense argues this was the reason the defendant was unable to remove the keys when asked to do so by the officer.

[3] Approximately an hour had elapsed between the time Officer Asarian arrived at the scene and the time he placed the defendant under arrest. RT 36:7-25, 37:1-25, 38:1-17. The defendant was transported to the hospital twenty minutes later. RT 60:19-21.

1  O'Connor included a picture of beer cans visible through the rear window of the vehicle. RT
2  55:16-25, 56:1-3. Officer O'Connor did not search the vehicle until after it was towed to the
3  road because of safety concerns, and specifically because she noticed broken glass, the vehicle
4  was on a slope, and an unidentified liquid was located near the vehicle. RT 59:22-23. Officer
5  O'Connor began her search approximately fifty minutes after the defendant's arrest, immediately
6  after she finished taking all the pictures she took. RT 38:9-16, 59:3-8, 74:1-3. The time that
7  elapsed between defendant's arrest and his car being connected to a cable, turned onto its wheels
8  and then towed up the slope to the road was approximately forty to forty-five minutes. RT 59:9-
9  60:1. Officer O'Connor searched the vehicle for evidence pertaining to defendant's driving
10 under the influence, as well as the vehicle's registration and defendant's insurance information.
11 RT 62:2-8. Officer O'Connor explained that she needed the hard copy of the registration both
12 for the police records and for the tow truck driver, RT 62:7-11, even though Officer Asarian had
13 run a license check of the vehicle to check the vehicle's registration. RT 77:17-20. In looking
14 for the registration information, Officer O'Connor searched the glove compartment of the vehicle
15 and found a plastic baggie of a green leafy substance, later determined to be marijuana. RT
16 62:17-18, 63:7-12, 74:20-25. Officer O'Connor then searched a cigarette box she found in the
17 vehicle and found another plastic baggie, apparently of the same green, leafy substance, also
18 determined to be marijuana. RT 64:2-22. The vehicle was not impounded; rather the vehicle
19 was taken from the scene by the private towing company. RT 43:24-25, 44:1-4.

20         Although defendant does not challenge his arrest, he does challenge the legality of
21 the search and seizure of his vehicle. The government argues that the search of defendant's
22 vehicle was a proper warrantless search incident to a lawful arrest and that there was probable
23 cause to search the vehicle for evidence that defendant was driving under the influence. Further,
24 the government points to the "community care-taking" function to justify the search of
25 defendant's vehicle.
26 /////

4

B. <u>Search of the Vehicle</u>

The Fourth Amendment protects the right of the people to be secure "in their persons, houses, papers, and effects, against unreasonable search and seizures." U.S. Const. amend. IV. Fourth Amendment protection also applies when a citizen enters an automobile. <u>New York v. Class</u>, 475 U.S. 106, 112 (1986).

    1. <u>Search Incident to Arrest</u>

One exception to the Fourth Amendment rule requiring a warrant to conduct a search allows a warrantless search of the passenger compartment of a vehicle to be conducted incident to arrest. <u>New York v. Belton</u>, 453 U.S. 454, 460 (1981); <u>United States v. Robinson</u>, 414 U.S. 218, 224 (1973). A search incident to arrest occurs when one has been lawfully arrested and the police conduct a warrantless search contemporaneously with the arrest. <u>Preston v. United States</u>, 376 U.S. 364, 367 (1964). Such a search may be made of the area within the arrestee's control, including a glove compartment and console. <u>Belton</u>, 453 U.S. at 460 n.4; <u>Robinson</u>, 414 U.S. at 224.

In the present case, it is undisputed that the defendant was lawfully arrested. Nor is there a dispute that the search of the defendant's vehicle was a warrantless search. The issue that must be decided is whether the search of the defendant's vehicle was made contemporaneously with his arrest.

There is no fixed temporal relationship between an arrest and a valid search incident to that arrest, but courts have said the lapse must be of a "reasonable time," and the search "roughly contemporaneous with the arrest" or "shortly after the arrestee has been removed from the area." <u>United States v. McLaughlin</u>, 170 F.3d 889, 892-93 (9th Cir. 1999) (citing <u>United States v. Moorehead</u>, 57 F.3d 875, 878 (9th Cir. 1995) and <u>United States v. Nelson</u>, 102 F.3d 1344, 1346 (4th Cir. 1996)). A valid search does not have to be "immediately upon the heels of an arrest," but can be "well after" the arrest as long as there has been a continuous sequence of events leading up to the search. <u>United States v. Smith</u>, 389 F.3d 944, 951 (9th Cir. 2004), <u>cert</u>.

1  denied, 544 U.S. 956 (2005).  Searches conducted less than five minutes after the arrest have
2  been approved, applying this test.  Id.  Some courts consider whether the "arresting officers
3  conducted the search as soon as it was practical to do so," or if there were any intervening acts
4  occurring before the search, unrelated to the search.  McLaughlin, 170 F.3d at 892.  Although
5  contemporaneity is relevant in determining whether the search is incident to arrest, the Ninth
6  Circuit notes "[t]here is no fixed outer limit for the number of minutes that may pass between an
7  arrest and a valid, warrantless search that is a contemporaneous incident of the arrest."  Id.  As
8  another circuit court has similarly observed,

> [t]he relevant distinction turns not upon the moment of the arrest versus the moment of the search but upon whether the arrest and search are so separated in time or by intervening events that the latter cannot be said to have been incident to the former.

12  United States v. Abdul-Saboor, 85 F.3d 664, 668 (D.C. Cir. 1996).  Thus, it is necessary to look
13  at the facts and circumstances of each case to determine the reasonableness of the search.
14  Cooper v. California, 386 U.S. 58, 59 (1967).

15  　　　　In McLaughlin, the defendant was arrested lawfully on an outstanding warrant
16  after being pulled over while driving a vehicle.  McLaughlin, 170 F.3d at 890.  A non-arresting
17  officer on the scene completed impoundment forms and then began a search of the defendant's
18  vehicle approximately five minutes after the arresting officer and the defendant departed for the
19  jail.  Id. at 890-91.  The searching officer found marijuana in a backpack within the passenger
20  compartment of the defendant's vehicle.  The court held that the automobile search was a search
21  incident to arrest because the completing of impoundment paperwork and the subsequent search
22  was "all one continuous series of events closely connected in time."  Id. at 893.

23  　　　　Defendant relies on United States v. Vasey and United States v. Ramos-Oseguera
24  for the proposition that too much time elapsed between the arrest and the search here to consider
25  the latter contemporaneous with arrest.  In Vasey and Ramos-Oseguera, the Ninth Circuit found
26  the vehicle searches at issue were not contemporaneous with the defendants' arrests.  United

6

States v. Vasey, 834 F.2d 782, 787-88 (9th Cir. 1987); United States v. Ramos-Oseguera, 120 F.3d 1028, 1037 (9th Cir. 1997), overruled on other grounds, United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000). In Vasey, the court held that a search that took place thirty to forty-five minutes after the defendant was arrested and placed in the police vehicle was not a search incident to arrest, because the delay occurred while the officers were having several conversations with the defendant, attempting to obtain the defendant's consent to a search of the vehicle. Vasey, 834 F.2d at 787-88. In Ramos-Oseguera, a search of the defendant's vehicle was not conducted until the defendants and the car were taken to the police station and the car was subsequently towed to another location. Ramos-Oseguera, 120 F.3d at 1036. Although the court did not specify how much time elapsed between the arrest and the search, the court held that the search was not contemporaneous with arrest. Id. The court distinguished the facts in McLaughlin from those in Vasey and Ramos-Oseguera based on the time that elapsed between the defendants' arrest and the subsequent search of the vehicles, suggesting that a greater time than the five minutes in McLaughlin had elapsed between the arrest and the search in Ramos-Oseguera. McLaughlin, 170 F.3d at 892. The court pointed to a further distinguishing factor, that being whether there was a continuous uninterrupted course of events. Id. In McLaughlin, the completion of impoundment paperwork and the searching of the vehicle were "all part of a continuous, uninterrupted course of events, all occurring within a relatively brief period of time." Id. In contrast, in Vasey the officer's attempts to obtain the defendant's consent to the search contributed to the delay in the vehicle search, and in Ramos-Oseguera the delay occurred because the defendant's car was moved to the police station and then towed to another location prior to the search. Vasey, 834 F.2d at 784; Ramos-Oseguera, 120 F.3d at 1036.

        In this case, defendant argues that the search of his vehicle was too remote in time to constitute a search incident to arrest. Based on a careful review of applicable case law and consideration of the particular facts of this case, this court disagrees. Time alone is never dispositive of the contemporaneity inquiry. United States v. Weaver, 433 F.3d 1104, 1107 n.1

7

(9th Cir. 2006). When a delay in the vehicle search occurs because of a safety concern for the officers on the scene, a search will not be considered remote from the time of the arrest if the search is conducted as soon as possible after the safety concern has been eliminated. United States v. Dento, 382 F.2d 361, 365-66 (3rd Cir. 1967). In other words, a search incident to arrest is not invalidated merely because officers take "reasonable safety precautions" prior to the search of the vehicle. Id. at 366; see also United States ex rel. Montgomery v. Wallack, 255 F. Supp. 566, 569 (S.D.N.Y. 1966) (holding that a vehicle search was made reasonably, promptly and substantially contemporaneously with the defendant's arrest even though there was a delay in the search because it was necessary for the officers to take safety precautions prior to the search).

In particular, a search that commences an hour after an arrest may still be considered a search incident to arrest if the search took place as soon as it became practical. United States v. Miles, 413 F.2d 34, 40-41 (3rd Cir. 1969). In Miles, the defendants were arrested in a hotel lobby, in which there was an electric power failure. Id. at 41. The officers conducted a cursory search in the hotel stairwell and again at the defendant's hotel room, however both areas were dark as a result of the power failure. Id. The defendants were searched a third time at the police station where evidence was seized from one of the defendants' pockets. Id. at 40. The court concluded that the seizure at the police station was incidental to the arrest because the darkened conditions at the hotel made it impractical to conduct a thorough search there. Id. at 41. The police station afforded the officers the ability to conduct a "careful and thorough search." Id.; see also United States v. Edwards, 415 U.S. 800, 804-05 (1974) (holding search was incident to arrest where the seizure of the detained defendant's clothing was not conducted until the morning after the arrest because the jail had no substitute clothing available for the defendant); United States v. Mazzochi, 424 F.2d 49, 50-52 (2nd Cir. 1970) (holding search occurring 3 ½ to 4 hours after arrest was a valid search incident to arrest where officers were not able to get into locked vehicle trunk until another officer arrived and opened the trunk).

Although the defendant points to the holdings of Vasey and Ramos-Oseguera,

which turned on the time that passed between the arrest and the search, those cases are distinguishable from this one.  In Vasey and Ramos-Oseguera, there is no indication that it was necessary for the arresting officers to take safety precautions prior to the search.  Here, Officer O'Connor searched the car approximately fifty minutes after defendant was arrested; she testified that the delay in time between the arrest and search was because of the safety precautions taken in light of defendant's vehicle being overturned on a slope on the embankment.[4]  After the vehicle was set upright on the road and she finished taking photographs, Officer O'Connor immediately conducted her search.  Under these circumstances, it cannot be said that the delay in the search was caused by an intervening act unrelated to the arrest.

    2. Vehicle Exception

An officer may search a vehicle without a warrant if he has probable cause to believe that the vehicle contains contraband or evidence of illegal activity.  Carroll v. United States, 267 U.S. 132, 149 (1925); Maryland v. Dyson, 527 U.S. 465, 467 (1999).  Probable cause is a "belief, reasonably arising out of circumstances known to the seizing officer" that the vehicle may contain contraband or evidence of illegal activity.  Carroll, 267 U.S. at 149.  The scope of such a search is the entire area of the vehicle that might contain the object of the search.  United States v. Ross, 456 U.S. 798, 820-24 (1982) (concluding that "[the scope of a warrantless search] is defined by the object of the search and the places in which there is probable cause to believe that it may be found").

In the present case, Officer O'Connor, the searching officer, was aware that defendant had been arrested for a DUI.  After taking photographs at the scene, she became aware that alcohol was located within the vehicle, giving her probable cause to believe that the vehicle

---

[4] While the record is unclear as to whether defendant climbed completely inside when he obtained his driver's license from the overturned vehicle at Officer Asarian's request, even if he did, such climbing all the way in would not be dispositive in defendant's favor.  It was reasonable for Officer O'Connor to determine it was unsafe and impractical to attempt a careful and thorough search of the entire vehicle while it was overturned, with broken glass and a spilled liquid nearby.

might contain open alcohol containers. Based upon this probable cause, she was justified in performing a limited search of the vehicle for the purpose of looking for open alcohol containers. Officer O'Connor searched the glove compartment for the vehicle registration, for the purpose of including it in her report and for the tow company driver. Defendant does not dispute that the officer had probable cause to look for evidence relating to the drunk driving offense, but challenges the validity of the search of the glove compartment and the cigarette box. Defendant argues that the officer should have terminated the search of the glove compartment once she was aware there were no open alcohol containers inside.

Officer O'Connor did not have probable cause to search the glove compartment after she became aware that it did not contain an open alcohol container. Further, she did not have probable cause to search the cigarette box before finding the baggie in the glove compartment, because she would not find an open alcohol container inside such a small container. Therefore, the officer's warrantless search of the glove compartment and cigarette box was not justified by the vehicle exception. The search of the glove compartment, however, is justified by the community care-taking function, as explained below.

3. <u>Community Care-taking Function</u>

a. <u>Waiver</u>

A motion to suppress must be raised prior to trial. Fed. R. Crim. P. 12(b)(3)(c). An objection is waived if it is made after the deadline set by the court under Rule 12(c). Fed. R. Crim. P. 12(e). Failure to raise a particular ground in a motion to suppress until after a conviction serves as a waiver of that ground. <u>United States v. Restrepo-Rua</u>, 815 F.2d 1327, 1329 (9th Cir. 1987).

Here, the court may consider the community care-taking function with regard to the vehicle search, because the issue has been raised in a timely manner.[5]

---

[5] The government raised the issue for the first time in its response to defendant's closing argument to the motion to suppress evidence. In accordance with the court's request, both parties

b. Applicability

A limited search of a vehicle by an officer may be justified when he or she is acting in a community care-taking function. The community care-taking function applies where an officer is acting out of concern for the public safety, and the search is reasonable and "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady v. Dombrowski, 413 U.S. 433, 442-47 (1973). A concern for public safety encompasses the removal of an automobile from a highway. United States v. Rodriguez-Morales, 929 F.2d 780, 785-86 (1st Cir. 1991). In connection with moving an automobile, the search of a glove compartment by an officer to locate the vehicle registration is reasonable. The Ninth Circuit has held that two arresting officers had probable cause to search the glove compartment of a vehicle for the registration certificate when the driver failed to properly display his vehicle's registration certificate, had an open container of alcohol in the car and improper license plate illumination. Kendrick v. Nelson, 448 F.2d 25, 27 (9th Cir. 1971). In Kendrick, when asked for the vehicle registration card, the driver said it was in the car. Id. at 26. The officer looked in the glove compartment and found a loaded clip for a rifle, in plain view. Id. at 26-27. The Ninth Circuit found that the search of the glove compartment was permissible because "an officer trained in his duties would have reason to believe that the registration certificate might be found in the glove compartment." Id. at 27. It further found that when the officer located the loaded clip in the glove compartment, he then had probable cause to believe that the vehicle may also contain a dangerous weapon. Id.

Both parties cite United States v. Johnson, 410 F.3d 137 (4th Cir.), cert. denied, __ U.S. __, 126 S. Ct. 461 (2005), as providing guidance in determining whether a warrantless search may be justified based on a community care-taking function. In Johnson, an officer arrived at an accident scene and found the driver of the damaged vehicle conscious, but

---

submitted supplemental briefings on the community care-taking function for purposes of resolving the motion to suppress.

11

unresponsive. Id. at 141.  The officer searched the glove compartment of the driver's vehicle in an attempt to locate the driver's identification, believing he might get a response from the driver if he was able to call the driver by name. Id. at 141-42.  Inside the glove compartment, the officer found a handgun, which he seized, and placed the driver under arrest. Id. at 142.  The driver sought to suppress the gun. Id.  The court pointed to the community care-taking function as a justification for the officer's search, id. at 145, noting that the function applies to permit a search of a vehicle where an officer otherwise lacks probable cause to search the vehicle and is not engaged in a criminal investigation. Id. at 144.  The court held that the officer was performing a community care-taking function when he opened the glove compartment to find the driver's identification information, because the officer was looking for the information in order to communicate more effectively with the driver and facilitate removal of the vehicle from the traffic lane. Id. at 144-45.  Because the officer's search was "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute" and there was no evidence that the officer's search was pretextual, the court denied the driver's motion to suppress the gun found in the glove compartment. Id. at 145-47.

In the present case, Officer O'Connor was acting in a community care-taking function when she searched the glove compartment of defendant's vehicle to retrieve the vehicle registration for purposes of making an accurate report and for the tow company driver to initiate the towing.  The towing was necessary to ensure the public safety while driving on the road.  Moreover, Officer O'Connor's search of the glove compartment was not a pretextual.[6]  Officer O'Connor testified that she was looking in the glove compartment to find the registration; she did not testify that she was looking for further evidence of drunk driving or any other crime.  Under

---

[6] Pretext refers to an officer's attempt to use "valid bases of action against citizens" as a false reason to pursue another investigatory motive. Whren v. United States, 517 U.S. 806, 811 (1996).  There has been no suggestion that Officer O'Connor thought she would find narcotics in the glove compartment.  Rather, Officer O'Connor's search of the glove compartment was motivated by the sole purpose of obtaining the vehicle registration.

the circumstances, the officer's search of the glove compartment to locate the vehicle registration was reasonable.  Although Officer Asarian previously had checked the vehicle registration using the vehicle's license plate number, Officer O'Connor needed the actual registration for her investigation report and so that the tow company could remove defendant's overturned vehicle from the embankment.  Defendant could not provide the vehicle registration himself, because he was no longer at the scene of the accident, having been lawfully arrested.  Therefore Officer O'Connor's search of the glove compartment for the vehicle registration was valid based on the community care-taking function.  Once the officer found the first baggie in the glove compartment in carrying out this function, probable cause then arose for the search of the cigarette box.

For the foregoing reasons, IT IS HEREBY ORDERED that defendant's motion to suppress is denied.

DATED: April 21, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

scott387.ord